# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                Plaintiff,

v.

LAVONTE L. JOHNSON,

                Defendant.

Case No. 13-CR-216-JPS

## ORDER

On November 5, 2013, a grand jury sitting in this district returned a single-count indictment against defendant Lavonte L. Johnson ("Johnson"), charging a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), which prohibits persons convicted of a felony from possessing a firearm that had previously been transported in interstate commerce. (Docket #1). Johnson filed a motion to suppress certain evidence (discussed below) and requested an evidentiary hearing on the matter; the government responded in opposition to both the motion and request. (Dockets #13, #15). On December 23, 2013, United States Magistrate Judge William E. Callahan issued an order denying Johnson's request for an evidentiary hearing, and recommending that this court deny Johnson's motion to suppress. (Docket #18). Johnson filed an objection to Magistrate Callahan's order and recommendation; again the government responded in opposition. (Dockets #19, #20). For the reasons that follow, the court agrees with Magistrate Callahan that the motion to suppress should be denied. The court further concurs in Magistrate Callahan's conclusion that an evidentiary hearing is unnecessary in this case.

1.      Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(B), a magistrate may consider dispositive motions and issue recommendations to the district judge

regarding the motions. *See id.* When a party objects to a magistrate's findings, the district court judge must make *de novo* determinations as to these findings. *See id.* § 636(b)(1)(C); *see also Delgado v. Bowen,* 782 F.2d 79 (7th Cir. 1986). The district court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate and has the final authority of judgment in the case. *Delgado*, 782 F.2d at 82. When a magistrate issues an order on a nondispositive motion, the court will only disturb the magistrate's order if it is clearly erroneous or otherwise contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); Fed.R.Crim.P. 59(a) (defining procedure for nondispositive motions before a magistrate).

2.    Background

On August 27, 2013, while viewing the Facebook pages for groups from his beat, Racine Police Officer Bryant Petersen ("Petersen") found a rap music video on YouTube. (Docket #13-2). In the video, Petersen observed Johnson displaying a firearm. Petersen knew Johnson to be on extended supervision, so he alerted Johnson's Probation Agent, Karen Hart ("Hart"). After viewing the video, Hart issued an Order to Detain Johnson. (Docket #13-1). The Order to Detain recounts that Johnson was on extended supervision following a felony conviction in Racine County Circuit Court Case No. 2010CF407 of substantial battery, in violation of Wis. Stat. 940.19(2). The Order further provides that the "behavior or violation resulting in custody" is the possession of a firearm. On August 29, 2013, Petersen and another officer observed Johnson walking down the street; knowing of the Order to Detain, Petersen arrested Johnson. Petersen performed a custodial

search of Johnson, during which search Petersen discovered a Smith and Wesson[1] .32 caliber revolver in the left pocket of Johnson's shorts.

Johnson's motion to suppress seeks to exclude the firearm on the grounds that Hart had no reasonable basis to issue the Order to Detain and, therefore, the arrest was improper, the custodial search was improper, and the firearm was unlawfully seized. In his order and recommendation, Magistrate Callahan concludes that there was a reasonable basis supporting the Order to Detain, and recommends that the motion be denied. Johnson objects.

3.     Analysis

The court first addresses the question of what standard applies to an order to detain an individual on extended supervision. Wisconsin Administrative Code § DOC 328.27 permits the detention of such an offender "[f]or investigation of an alleged violation of a rule or condition of release." Wis. Admin. Code § DOC 328.27(2)(a) (July 2013). However, in interpreting this Code provision and its predecessor,[2] Wisconsin Courts have held that the Fourth Amendment to the United States Constitution demands any detention to investigate an alleged violation to be "reasonable." *See State v. Goodrum,*

---

[1] The police report identifies the firearm as a Smith and Wesson .32 caliber revolver, but the federal indictment charges Johnson with possession of a Harrington and Richardson Arms .32 caliber revolver. The court leaves it to the parties to determine if this is an error, and if so, what appropriate steps need be taken.

[2] This chapter of the Administrative Code was repealed and recreated, effective July 2013. The referenced provision was previously numbered Wis. Admin. Code § DOC 328.22, and cases cited in this order from prior to July 2013 refer to it as such. *See State v. Lee*, No. 2012AP1042-CR, at ¶ 10 n.3, 2013 WL 5911454 (Wis. Ct. App. Nov. 5, 2013) (publication pending).

449 N.W.2d 41, 44 (Wis. Ct. App. 1989); *State v. Riley*, 604 N.W.2d 33 (Wis. Ct. App.1999) (unpublished table decision). Whether a detention is "reasonable" depends upon the facts and circumstances of each case. *Goodrum*, 449 N.W.2d at 44.

Johnson contends that Magistrate Callahan applies an incorrect standard. According to Johnson, Magistrate Callahan's recommendation concludes that Hart could order Johnson detained for purely investigative reasons; Johnson urges that the proper legal standard requires "reasonable grounds for concluding that a supervision violation has occurred." Objection (Docket #19) at 4. The court will not sustain Johnson's objection on this point for two reasons. First, the court rejects the premise of Johnson's argument and disagrees with counsel's characterization of Magistrate Callahan's analysis. Second, the court concludes that the legal standard as Magistrate Callahan articulates comports with Wisconsin case law interpreting the relevant provision of the Administrative Code.

First, the court addresses Johnson's characterization of Magistrate Callahan's analysis. Contrary to Johnson's claims, Magistrate Callahan does not conclude that Hart could detain Johnson just for purposes of investigation; rather, Magistrate Callahan assesses the reasonableness of Johnson's detention based upon the facts known to Hart when she issued the Order of Detention. As discussed in further detail below, Magistrate Callahan concludes that Hart could order Johnson detained for investigation "as long as she had a reasonable basis for doing so." Recommendation (Docket #18) at 7. In determining whether she had such a "reasonable basis," Magistrate Callahan finds that "Hart reasonably believed that Johnson violated his extended supervision by possessing a firearm."

Recommendation at 7. Reading the entirety of Magistrate Callahan's analysis, it is clear that the recommendation's conclusion that Hart "had a reasonable basis" for detaining Johnson is supported by Magistrate Callahan's finding that Hart "believed that Johnson violated his extended supervision," and that such belief was "reasonabl[e]."

Further, Magistrate Callahan's analysis comports with Wisconsin case law interpreting the relevant provision of the Code, including the very case Johnson cites in support of his argument. Objection at 4. To briefly summarize the relevant facts, in *State v. Riley*, a DOC supervisor ordered Riley detained for investigation of a possible parole violation. 604 N.W.2d 33, at *5 (Wis. Ct. App.1999) (unpublished table decision). The Wisconsin Court of Appeals explained that certain facts established "reasonable cause" that "there was a good likelihood that Riley had violated his parole." *Id.* But the court doesn't stop there; its final conclusion is that detention was proper because "it was reasonable for [the DOC supervisor] to believe Riley…had violated the conditions of his parole." *Id.* Magistrate Callahan's analysis parallels that of the Wisconsin Court of Appeals in *Riley*; the recommendation assesses whether Johnson likely violated his supervision, and concludes that Hart "reasonably believed that Johnson violated his extended supervision." For these reasons, Johnson's objection cannot be sustained on the ground that Magistrate Callahan applied an improper standard.

Finding no error in the standard Magistrate Callahan employs, the court now reviews the recommendation's analysis of Johnson's claims. In his motion to suppress, Johnson argues that the video does not provide a reasonable basis to detain Johnson for two reasons: first, because it was

unreasonable for Hart to conclude that the firearm in the video is a real firearm; and second, because there is no indication of when the video was taken, and therefore no way to determine that the conduct occurred after Johnson was placed on extended release. Motion Brief (Docket #13) at 5-9. The court considers each argument in turn.

First, Johnson moves to suppress on the ground that it was not reasonable to believe that the firearm in the video was a real firearm. Johnson argues that the video contained two disclaimers[3] stating that the guns in the video are not real, and that rap videos often depict images of drugs, gangs, and firearms, but this imagery does not mean that the participants actually engaged in that conduct. Motion Brief at 5-9. In his recommendation, Magistrate Callahan notes that Hart viewed the video, that Hart observed Johnson in the video, and that Johnson displayed a firearm that appeared to Hart to be genuine. Recommendation at 6-7. On these facts, Magistrate Callahan determined that "Hart reasonably believed that Johnson violated his extended supervision by possessing a firearm," and that, accordingly, it was reasonable for Hart to order Johnson detained so she could further

---

[3]There is a factual dispute regarding whether or not the disclaimers were posted when Petersen and Hart saw the video. Magistrate Callahan concludes that resolution of this factual dispute is not necessary to the resolution of Johnson's motion because, even if the disclaimers were present, Hart "was not bound to take them as the gospel truth." The court agrees with Magistrate Callahan on this point; the presence of the disclaimers do not mandate a conclusion that the gun was a prop, and even if Hart saw the disclaimers, she could still reasonably conclude that the gun was genuine. Because the determination of this factual dispute will not affect the outcome of the motion, the court deems it immaterial, and can resolve the motion to suppress without resolving the dispute. *U.S. v. Coleman*, 149 F.3d 674, 677 (7th Cir. 1998).

investigate pursuant to Wis. Admin. Code § DOC 328.27. Recommendation at 7.

Johnson objects on the grounds that nothing in the record shows that Hart had any expertise in firearms or the ability to distinguish between a real gun and a prop. Objection at 3. Johnson further argues that a gun is a common prop in rap videos for songs dealing with urban violence, and asserts that "[i]t does not make a prop gun in a rap video any more likely to be real than the prop guns used in motion pictures." Objection at 6. The government responds that Hart did not have to establish that the firearm was genuine because reasonableness under the Code is not probable cause or even reasonable suspicion. Objection Response (Docket #20) at 3. The government is certainly correct that probable cause is not required in this instance because individuals on supervision "have a more limited liberty interest than ordinary citizens." *Knox v. Smith*, 342 F.3d 651, 657 (7th Cir. 2003) (*citing Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)). The question is whether Hart had a reasonable basis for concluding that Johnson had violated the terms of his supervision, considering all the facts and circumstances. *Goodrum*, 449 N.W.2d at 44.

The court agrees with Magistrate Callahan that Johnson's conduct in the video provides a reasonable basis from which Hart concluded that Johnson likely violated the terms of his supervision. First, Johnson's argument that the gun in the rap video was no more likely to be real than prop guns in motion pictures overlooks substantial differences in the facts and circumstances of the YouTube video and professional movies. Throughout briefing on this matter, Johnson attempts to draw a comparison between himself and Robert Downey, Jr. or Danny Trejo, both Hollywood

actors with felony convictions who appear in violent films containing guns. Motion Brief at 7; Objection Reply (Docket #21) at 4. The law does not demand that law enforcement officers view a homemade rap video in the same light as a major motion picture; rather, law enforcement is able, and indeed required, to be "reasonable" in their assessment of the situation. It is simply unreasonable to conclude that, because the movie industry employs substantial resources to obtain realistic props, a homemade video posted to YouTube must also use prop weapons. Given the production value of the video, which appears to have been filmed on an iPhone or similar widely-available camera (not with a professional camera) and which also appears to have been shot on city streets and backyards (not on a professional set), it is reasonable for a viewer to conclude that no expense was taken to obtain realistic prop guns. Also, that the record does not contain information regarding Hart's training in differentiating real from fake guns does not negate the reasonableness of Hart's assessment of the video. The law permits Hart to order Johnson detained if she has a reasonable basis for doing so; at this stage in the proceedings, she is not required to consult experts, or to be an expert herself, to prove that the firearm was actually authentic.

Johnson also moves to suppress on the grounds that the video does not indicate when it was made, and there is no evidence that the video was made after Johnson was released on extended supervision. Motion Brief at 7. In his recommendation, Magistrate Callahan notes that the video was posted online in late August 2013, and concludes that it was, consequently, reasonable for Hart to request the detention order. Recommendation at 7. Johnson objects, reiterating the argument from his initial motion. Objection at 5. The court agrees with Magistrate Callahan on this point. Had the video

been posted on a date prior to Johnson's release on extended supervision, the analysis would obviously be different. However, given that Hart only needed a reasonable basis to order Johnson detained, not probable cause, the inability to decipher the exact date of the video is not fatal to the reasonableness of the detention order. In this context, the fact that the video had recently been posted is enough to support a reasonable basis for concluding that Johnson had violated a condition of his supervision. For the above-stated reasons, the court concludes it should adopt Magistrate Callahan's recommendation that Johnson's motion to suppress be denied.

Finally, Johnson also objects to Magistrate Callahan's order denying an evidentiary hearing in this matter. Objection at 7. An evidentiary hearing is warranted only when the defendant's allegations are definite, non-conjectural and detailed enough to enable the court to conclude that a substantial claim is presented and that there are disputed issues of material fact that will affect the outcome of the motion. *United States v. Coleman*, 149 F.3d 674, 677 (7th Cir. 1998). The only "definite" allegations of factual disputes Johnson articulates concern facts that are not necessary to the determination of his motion. Accordingly, an evidentiary hearing is not required in this case, and Johnson's request for a hearing was properly denied.

Accordingly,

IT IS ORDERED that the December 23, 2013 recommendation of Magistrate Judge William E. Callahan (Docket #18) that defendant Lavonte L. Johnson's motion to suppress (Docket #13) be denied be and the same is hereby ADOPTED; and

IT IS FURTHER ORDERED that defendant Lavonte L. Johnson's motion to suppress (Docket #13) be and the same is hereby DENIED.

Dated at Milwaukee, Wisconsin, this 22nd day of January, 2014.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge